IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

| | |
|---|---|
| NORTHWESTERN MEMORIAL HEALTHCARE, <br><br> Plaintiff, <br><br> v. <br><br> ANTHEM BLUE CROSS AND BLUE SHIELD LLC f/k/a EMPIRE BLUECROSS AND BLUESHIELD; and DOES 1 THROUGH 25 INCLUSIVE, <br><br> Defendants. | Case No. 24 C 2777 <br><br> Hon. LaShonda A. Hunt |

### MEMORANDUM OPINION AND ORDER

Plaintiff Northwestern Memorial Healthcare ("Northwestern") sued Defendants Anthem HealthChoice Assurance, Inc. d/b/a Anthem Blue Cross and Blue Shield ("HealthChoice")[1] and Does 1 through 25, Inclusive, in state court for breach of implied contract and quantum meruit for failing to pay for medical services rendered to participants under a HealthChoice-administered benefit plan. HealthChoice removed the case to federal court based on diversity jurisdiction. Currently before the Court is HealthChoice's motion to dismiss Northwestern's complaint (Dkt. 13) as preempted by federal law and for failure to state a claim. For the reasons stated below, the motion is granted.

---

[1] HealthChoice represents that it was improperly sued as "Anthem Blue Cross and Blue Shield LLC," and was formerly known as "Empire HealthChoice Assurance, Inc." (Mot., at 375, Dkt. 14). Unless otherwise noted, page numbers in citations to the docket reference the "PageID #" in the CM/ECF header of the document, not other page numbers in the header or footer.

**BACKGROUND**

Northwestern is a healthcare provider in Illinois. (Compl. ¶ 3, Dkt. 1-1). Starting January 1, 2003, Northwestern was a signatory to a written contract (the "Contract") with Health Care Services Corporation d/b/a Blue Cross Blue Shield of Illinois ("HCSC"), a non-party to this action. (*Id.* ¶ 26). The Contract obligated Northwestern to treat individuals belonging to health plans financed, sponsored, and/or administered by member companies of the national Blue Cross Blue Shield Association. (*Id.*). New York-based HealthChoice is one of those members. (*Id.* ¶¶ 4, 26).

Between March 11, 2020, and April 22, 2021, Northwestern provided services to two individuals (the "Patients"), which resulted in two different benefits claims. (*Id.* ¶ 11). The Patients were beneficiaries of a HealthChoice health insurance plan when treated. (*Id.* ¶¶ 3).[2] Northwestern contacted HealthChoice to verify the Patients' eligibility and to obtain authorization for treatment. (*Id.* ¶ 36). Although HealthChoice was not a Contract signatory, Northwestern alleges the Contract obligated it to treat HealthChoice beneficiaries and accept HealthChoice payments at the discounted rates found in the Contract. (*Id.* ¶ 27). After providing authorized medical services, Northwestern billed HealthChoice $305,440.87 but requested payment of only $105,849.58, consistent with the Contract's discounted rates. (*Id.* ¶¶ 17, 33). HealthChoice paid just $17,116.55, leaving $88,733.03 unpaid. (*Id.*).

When HealthChoice declined to pay the remaining balance, Northwestern sued in state court, claiming that HealthChoice breached an implied-in-fact contract by failing to pay the full

---

[2] Northwestern provided HealthChoice with identifying information for the Patients and HealthChoice confirmed both are members of self-funded plans governed by ERISA. (Mot., at 388 n. 7, Dkt. 14). Northwestern does not dispute that the relevant HealthChoice plans are governed by ERISA. (*See generally*, Opp'n, at 1207-1211, Dkt. 36) (frequently referring to the Patient's plans as "ERISA plan[s]" and the like).

amount owed. (*Id.* ¶¶ 43-46). Northwestern also plead in the alternative a quantum meruit theory of recovery. (*Id.* ¶ 50).

HealthChoice removed this action to federal court, (Notice of Removal, at 4, Dkt. 1), and then sought dismissal of the complaint under Federal Rule of Civil Procedure 12(b)(6) because Northwestern's claims are preempted by the Employee Retirement Income Security Act of 1974 ("ERISA") and the complaint allegations are insufficient. (Mot., Dkt. 14).[3] The motion is fully briefed.

## STANDARD OF REVIEW

Rule 12(b)(6) provides that a complaint may be dismissed if it fails to state a claim upon which relief may be granted. Fed. R. Civ. P. 12(b)(6). For purposes of analyzing a motion to dismiss, facts that are well-pled must be accepted by the court as true, and all reasonable inferences must be drawn in the plaintiff's favor. *White v. United Airlines, Inc.*, 987 F.3d 616, 620 (7th Cir. 2021). However, the court need not accept legal conclusions as true. *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 555 (2007) (citing *Papasan v. Allain*, 478 U.S. 265, 286 (1986)). And a claim must be facially plausible to survive a motion to dismiss. *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." *Id.*

## DISCUSSION

**I. ERISA Conflict Preemption**

"In enacting ERISA, Congress included two distinct and powerful preemption provisions: complete preemption under ERISA § 502, 29 U.S.C. § 1132, and conflict preemption under

---

[3] HealthChoice also maintained under Fed. R. Civ. P. 12(b)(2) that the Court lacked personal jurisdiction over it. (Mot. at 378-382). After the parties were allowed limited discovery on the issue, HealthChoice withdrew its jurisdictional challenge. (Minute Order, Dkt. 35).

3

ERISA § 514, 29 U.S.C. § 1144." *Davis v. Richards*, 7 F.4th 534, 540 (7th Cir. 2021). HealthChoice asserts that Northwestern's claims are conflict preempted under the latter provision, which preempts "any and all State laws insofar as they may now or hereafter relate to any employee benefit plan" covered by ERISA. 29 U.S.C. § 1144(a). "[C]onflict preemption in a general sense . . . is broader than complete preemption," and acts as a defense to state-law claims rather than an independent basis for jurisdiction like complete preemption. *Franciscan Skemp Healthcare, Inc. v. Cent. States Joint Bd. Health & Welfare Tr. Fund*, 538 F.3d 594, 600-601 (7th Cir. 2008). The broad language of ERISA's conflict preemption provision poses challenges because: "If 'relate to' were taken to extend to the furthest stretch of its indeterminacy, then for all practical purposes pre-emption would never run its course . . . ." *Davis*, 7 F.4th at 540 (quoting *N.Y. State Conf. of Blue Cross & Blue Shield Plans v. Travelers Ins. Co.*, 514 U.S. 645, 655 (1995)). "But, on the other hand, Congress clearly intended ERISA preemption to be broad. Congress chose 'deliberately expansive' language, 'conspicuous for its breadth.'" Davis, 7 F.4th at 540 (quoting *Cal. Div. of Lab. Standards Enf't v. Dillingham Constr., N.A., Inc.*, 519 U.S. 316, 324 (1997)).

Because the statutory text offers little interpretive help in determining the guardrails of ERISA conflict preemption, the Supreme Court "considers ERISA's objectives as a guide to the scope of the state law that Congress understood would survive." *Rutledge v. Pharm. Care Mgmt. Ass'n*, 592 U.S. 80, 86 (2020) (quotes omitted). Congress's objective in enacting this statutory provision was "'to ensure that plans and plan sponsors would be subject to a uniform body of benefits law,' thereby 'minimiz[ing] the administrative and financial burden of complying with conflicting directives' and ensuring that plans do not have to tailor substantive benefits to the

4

particularities of multiple jurisdictions." *Id.* (quoting *Ingersoll-Rand Co. v. McClendon*, 498 U.S. 133, 142 (1990)).

Consistent with that legislative intent, the Supreme Court has held that a law "relates to" an ERISA plan "if it has a connection with or reference to such a plan." *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 96-97 (1983) (state law requiring plans to pay specific benefits was not enforceable against ERISA plans). "This generally encompasses two categories of state laws." *Davis*, 7 F.4th at 541 (citing *Gobeille v. Liberty Mut. Ins. Co.*, 577 U.S. 312, 319 (2016)). First, "[w]here a State's law acts immediately and exclusively upon ERISA plans . . . or where the existence of ERISA plans is essential to the law's operation . . . , that reference will result in pre-emption." *Gobeille*, 577 U.S. at 319-320; *see, e.g., Mackey v. Lanier Collection Agency & Serv., Inc.*, 486 U.S. 825, 829 (1988) ("The Georgia statute at issue here expressly refers to—indeed, solely applies to—ERISA employee benefit plans."). Second, ERISA preempts a state statute or claim that, while not facially tied to ERISA, "'governs . . . a central matter of plan administration' or 'interferes with nationally uniform plan administration.'" *Gobeille*, 577 U.S. at 320 (quoting *Egelhoff v. Egelhoff*, 532 U.S. 141, 148 (2001)) (preempting Washington benefits rule that would create state-by-state differences in plan administration).

"State laws that directly prohibit something ERISA permits, and vice versa, fall into this second category." *Davis*, 7 F.4th at 541; *see also, e.g., Alessi v. Raybestos-Manhattan, Inc.*, 451 U.S. 504, 524 (1981) (state law preempted "because it eliminates one method for calculating pension benefits—integration—that is permitted by federal law"). But direct conflict is not always needed to show preemption. Some state laws that run parallel to or in harmony with ERISA's requirements are nonetheless preempted. *Gobeille*, 577 U.S. at 323 ("[E]ven parallel[] regulations from multiple jurisdictions could create wasteful administrative costs and threaten to subject plans

5

to wide-ranging liability"); *but see Rutledge*, 592 U.S. at 88 ("ERISA does not pre-empt state rate regulations that merely increase costs or alter incentives for ERISA plans without forcing plans to adopt any particular scheme of substantive coverage.").

Although ERISA preemption is "expansive," *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 46 (1987), the Seventh Circuit has observed that it is a "murky" doctrine and that "the Supreme Court has been at least mildly schizophrenic" in mapping the contours of what it means for a state law to "relate to any employee benefit plan." *Trs. of AFTRA Health Fund v. Biondi*, 303 F.3d 765, 773 (7th Cir. 2002) (quotes omitted). In *Biondi*, the Seventh Circuit echoed the Supreme Court's rule that a state law can be said to "relate to" an employee benefit plan if it "has a connection with or reference to such a plan." *Id.* at 774 (quoting *Shaw*, 463 U.S. at 96-97). The *Biondi* court went on to flesh out this rule, instructing that a state law can have a "connection with or reference to" an employee benefit plan where it: "(1) mandates employee benefit structures or their administration; (2) binds employers or plan administrators to particular choices or precludes uniform administrative practice, thereby functioning as a regulation of an ERISA plan itself; and (3) provides an alternative enforcement mechanism to ERISA." *Id.* at 775 (quoting *N.Y. State Conf.*, 514 U.S. at 658-660). ERISA also "preempts a state law claim if the claim requires the court to interpret or apply the terms of an employee benefit plan." *Id.* at 780 (quotes omitted). That said, a state law claim is not preempted simply because "it requires a cursory examination of ERISA plan provisions." *Id.* And when a plaintiff's claims are from within "a traditional area of state regulation," the defendant "bears the considerable burden of overcoming the starting presumption that Congress does not intend to supplant state law." *Id.* at 775.

ERISA does not conflict preempt contractual claims where reviewing an ERISA plan is not necessary to resolve them. *Kolbe & Kolbe Health & Welfare Benefit Plan v. Med. Coll. of Wis.,*

6

*Inc.*, 657 F.3d 496, 504 (7th Cir. 2011). In *Kolbe*, a hospital billed an employee benefit plan for a child's medical services. *Id.* at 500. The plan paid over one million dollars but later demanded repayment after determining that the child was not covered under the ERISA plan. *Id.* When the hospital refused, the plan sued, acknowledging in its filings that the child was not covered under the plan because their parent never completed the required paperwork. *Id.* at 502-503. Although the district court dismissed the plan's breach of contract claims as preempted, the Seventh Circuit found that since the case "d[id] not require interpreting or applying the Plan, nor does it relate to the Plan in any significant way, [the plan's] state law claims are not preempted." *Id.* at 504-505. The court reasoned that in order to resolve the breach of contract claims, it need not interpret the benefit plan because it was undisputed that the child was not covered. *Id.*

On the other hand, the Ninth Circuit recently addressed ERISA conflict preemption under similar circumstances in *Bristol SL Holdings, Inc. v. Cigna Health & Life Ins. Co.*, 103 F.4th 597 (9th Cir. 2024). *Bristol* held that the plaintiff's state law contract claims were conflict preempted under ERISA because they had both an impermissible "reference to" and "connection with" ERISA plans administered by the defendant. *Id.* at 602. There, the plaintiff drug treatment facility would call the defendant insurer to check for a patient's eligibility under a healthcare plan when they arrived for medical services. *Id.* at 600. This relationship between the parties went on for several years without incident, until the defendant began denying reimbursement for medical services rendered without additional documentation. *Id.* The district court granted summary judgment to the defendant insurer on the plaintiff's state-law claims, including a claim for breach of implied contract based on the verification and authorization communications between the parties, ruling that ERISA preempted those claims. *Id.* at 601-602.

7

The Ninth Circuit affirmed on two grounds. First, the plaintiff's state law contract claims made "reference to" ERISA plans. *Id.* at 604. "By attempting to secure plan-covered payments discussed via phone through the alternative means of state contract law, [the plaintiff] is seeking to obtain through a [state contract] remedy that which [it] could not obtain through ERISA. This effort triggers preemption." *Id.* at 603 (quotes omitted). The court rejected the plaintiff's attempt to characterize its claims as based on the defendant's failure to pay according to representations made during verification calls, rather than on ERISA duties. *Id.* at 603-604. Instead, the court noted the plaintiff's reliance on ERISA plans for its calculations of damages amounted to an impermissible "reference to" ERISA. *Id.* at 603-604.

Second, the claims had a "connection with" ERISA. *Id.* at 605. The court reasoned that according to the plaintiff's "theory of state contract law liability . . . , every time a plan administrator verifies plan coverage in standard pre-treatment calls, but then later denies reimbursement . . . , the insurer would be legally bound to make payment based on the earlier call." *Id.* at 604. This obligation "would be at odds with the way ERISA plans operate, because reimbursement under a plan is ultimately contingent on information and events beyond initial verification and preauthorization communications." *Id.* The plaintiff's theory would create a "Catch-22" where "administrators must abandon either their plan terms or their preauthorization programs . . . [which] is the kind of intrusion on plan administration that ERISA's preemption provision seeks to prevent." *Id.* at 605 (citing *Gobeille*, 577 U.S. at 320). This, the Ninth Circuit held, would impermissibly interfere with uniform plan administration nationally, or "the type of discordant regime that ERISA's comprehensive pre-emption of state law was meant to minimize." *Id.* (quoting *Shaw*, 463 U.S. at 105 n. 25).

## II. Northwestern's Claims

Northwestern argues that this case "is in no way related to" ERISA. (Pl.'s Opp'n at 1211, Dkt. 36). In contrast, HealthChoice insists that the Court cannot decide the issues raised without reference to the terms of the Patients' ERISA plans. (Def.'s Reply at 1228, Dkt. 40). Upon consideration of the briefs and the governing case law, the Court finds this scenario is more like *Bristol* than *Kolbe*. And because Northwestern's breach of implied contract and quantum meruit claims depend on the alleged misinterpretation of coverage under the ERISA plans at play, they are preempted.

Northwestern's theory of the case is simple—pursuant to the Contract, it treated the Patients who were covered by a reduced-rate HealthChoice plan, and yet HealthChoice denied and/or underpaid for those medically necessary services. Specifically, Northwestern alleges that, prior to admitting the Patients to its facilities, it "contacted [HealthChoice] to verify Patients' healthcare eligibility under a [HealthChoice] health plan, to obtain authorization from [HealthChoice] for the medical services rendered and to be rendered." (Compl. ¶ 36). And that HealthChoice "received premium payments for Patients' enrollment and coverage in [HealthChoice's] respective health plans," and implied and understood that it "would pay the discounted rates under the Contract to [Northwestern] for the necessary medical treatment rendered to" those covered Patients. (*Id.* ¶¶ 20, 35). Nevertheless, HealthChoice shorted Northwestern about $88,733.03 "for the medically necessary services, supplies and/or equipment rendered or supplied" to the Patients. (*Id.* ¶¶ 45-46). Notably, the exhibit Northwestern attached to the complaint shows that HealthChoice allegedly underpaid, or did not pay at all, on the Patients' healthcare claims because of a dispute over whether the services were for a "MEDICAL NECESSITY." (*Id.*, Ex. A, at 36) (capitalization in original).

9

At bottom, the complaint makes clear that Northwestern's claims are based on a denial of payment—either in whole or in part—because HealthChoice determined the services rendered to each Patient did not satisfy "medical necessity" as required under their healthcare plans. Thus, resolution of this payment dispute will require impermissible "reference to" the Patients' ERISA plans. Indeed, a determination of liability and damages on Northwestern's claims—both for breach of an implied-in-fact contract and quantum meruit—"are based (at least in part) on the alleged non-payments or underpayments by [HealthChoice] for medical services rendered to . . . ERISA plan beneficiar[ies]." *John Muir Health v. Health Care Serv. Corp.*, No. 22-cv-6963, 2023 WL 4707430, \*4 (N.D. Ill. July 24, 2023) (finding implied-in-fact contract and quantum meruit claims to be completely preempted by ERISA). Stated another way, whether Northwestern is entitled to damages depends on what benefits and payments for medically necessary services are owed under the ERISA-governed benefit plans. *See id.* at \*10; *see also Laborers' Pension Fund v. Lake City Janitorial, Inc.*, 758 F. Supp. 2d 607, 615 (N.D. Ill. 2010) ("[P]reemption is appropriate under the third prong of *Biondi*" only when "the existence of [an ERISA] plan is a critical element of a state-law cause of action," or when a state law claim "requires the court to interpret or apply the terms of an employee benefit plan") (quotes omitted).

Likewise, Northwestern's state-law claims impermissibly have a "connection with" ERISA. Like the claims in *Bristol*, Northwestern's theories of liability would legally bind an insurer to make payment every time a plan administrator verifies coverage in routine pre-treatment communications. This "Catch-22," where administrators must abandon either their plan terms or their preauthorization programs, functions as a regulation of ERISA plans and falls directly into the second prong of *Biondi* because it binds plan administrators to particular choices and precludes uniform administrative practice. This proposed binding enforcement regime is the exact kind of

10

intrusion on plan administration that ERISA's preemption provision seeks to prevent. *Bristol*, 103 F.4th at 605 (finding that a similar practice is "the type of discordant regime that ERISA's comprehensive pre-emption of state law was meant to minimize").

Accordingly, the Court finds that Northwestern's state-law claims impermissibly "relate to" and have a "connection with" an employee benefit plan, and are therefore preempted by ERISA § 514, 29 U.S.C. § 1144(a).[4]

Northwestern offers two arguments in support of its position, but neither is persuasive. First, seeming to invoke the distinction between "right to payment" and "amount of payment" claims, Northwestern maintains that the conflict preemption issue here "turns entirely upon the payment rate [HealthChoice] issued for the claims." (Opp'n at 1211). In cases brought by healthcare providers against insurers, there is:

> [A] common distinction in the case law between claims involving the 'right to payment' and claims involving the 'amount of payment'—that is, on the one hand, claims that implicate coverage and benefits established by the terms of the ERISA benefit plan, and, on the other hand, claims regarding the computation of contract payments or the correct execution of such payments.

*CEP Am.-Illinois v. Cigna Healthcare of Ill., Inc.*, No. 23 C 14330, 2024 WL 3888879, at *3 (N.D. Ill. Aug. 21, 2024) (quoting *Montefiore Med. Ctr. v. Teamsters Loc. 272*, 642 F.3d 321, 331 (2d Cir. 2011)). "The former are said to constitute claims for benefits that can be brought pursuant to § 502(a)(1)(B), while the latter are typically construed as independent contractual obligations between the provider and the PPO or the benefit plan." *Id.* (quoting *Montefiore*, 642 F.3d at 331). That is because "issues regarding the rate of reimbursement 'take each patient's eligibility [under the ERISA plan] as a given and do not call upon the court to construe or apply plan provisions.'"

---

[4] Given this finding, the Court need not reach the merits of HealthChoice's other Rule 12(b)(6) arguments which are denied without prejudice to renewal as to any amended complaint filed in this case.

11

*Affiliated Dialysis of Joliet, LLC v. Health Care Serv. Corp.*, No. 23 C 15086, 2024 WL 1195607, at *3 (N.D. Ill. Mar. 20, 2024) (quoting *Stanford Health Care v. Health Care Serv. Corp.*, No. 23 C 4744, 2023 WL 7182990, at *4 (N.D. Ill. Nov. 1, 2023)). Thus, "[c]ourts have consistently held that an insurer's alleged failure to adequately pay a medical provider constitutes a separate, independent legal duty that is incompatible with ERISA preemption . . . ." *Id.* (collecting cases).

Northwestern's claims involve the "right to payment" under an ERISA plan and not the payment rates imposed by another legal device. Northwestern relies on the Contract between Northwestern and HCSC to determine damages. (Compl. ¶¶ 33-46) (alleging that HealthChoice owes Northwestern payment according to the discounted rates under the Contract). However, the Contract itself is focused on payment rates for specific services and has nothing to do with whether particular services are deemed medically necessary in accordance with the Patients' healthcare plans. *Affiliated Dialysis*, 2024 WL 1195607, at *3 ("[Insurer]'s legal duty to adequately pay [the medical provider] is separate from its legal duty to cover the treatment as required under the ERISA plan."). Indeed, the exhibit attached to Northwestern's complaint reflects that HealthChoice paid *nothing* on one of the two healthcare claims underlying this case. (Compl., Ex. A, at 36). And, as discussed *supra*, the same exhibit suggests that both claims were denied because of a lack of medical necessity of the services rendered. (*Id.*). In short, the nature of Northwestern's claims as pled coupled with the attachments to the complaint establish that the crux of this dispute hinges on Northwestern's entitlement to payment for covered services under an ERISA plan, not whether HealthChoice remitted the correct discounted rate under the Contract.

Second, Northwestern asserts in its response brief that the implied contract claim is based off "industry-accepted criteria" for a determination of what is "medically necessary." (Opp'n, at 1211, n. 11). When ruling upon a motion to dismiss, only non-conclusory factual allegations in the

12

complaint are considered. *Leach v. UAW Local 1268 Region 4*, No. 3:22-cv-50004, 2022 WL 17605327, at *2 (N.D. Ill. Dec. 13, 2022) (citing *Twombly*, 550 U.S. at 570) ("[A]t the pleading stage, a complaint's factual allegations, rather than any legal conclusions, must raise the plausible inference that the defendant is liable for the complained of misconduct."). Drawing all reasonable inferences from the complaint, the premise is that Northwestern provided medically necessary services to covered patients which triggered HealthChoice's duty to pay according to the Contract or "the reasonable and customary value of the services rendered." (*Id.* at 1211). Putting to the side the impropriety of arguing in a footnote that the definition of "medically necessary" is unresolved, this change in tactic does not help Northwestern. Rather, it reinforces the Court's conclusion that the threshold question to be decided is what constitutes medically necessary treatment under the Patients' ERISA-governed healthcare plans. *See, e.g., Pilot Life*, 481 U.S. at 47-48 (holding that common law contractual claim "based on [an] improper processing of a claim for benefits under an employee benefit plan . . . undoubtedly meet[s] the criteria for pre-emption under § 514(a)"); *Spain v. Aetna Life Ins. Co.*, 11 F.3d 129, 131 (9th Cir. 1993) (finding common law cause of action preempted by § 514(a) where "Appellants d[id] not seek benefits under the plan, [but] their state common law cause of action seeks damages for the negligent administration of benefit claims.").

Finally, Northwestern notes a recent opinion that found similar implied-in-fact contract and quantum meruit claims of a healthcare provider were not preempted by ERISA. *Regents of the Univ. of Cal. v. Health Care Serv. Corp.*, No. 22 C 6960, 2024 WL 2209595, *6 (N.D. Ill. May 14, 2024) (Hunt, J.). In *Regents*, this Court remanded that action to state court after concluding the provider's state-law claims were not completely preempted under ERISA § 502 because: (1) the hospital was not contesting "denial of coverage or seeking payment or benefits under the patients'

13

plans"; and (2) its "complaint assert[ed] a right to payment that ar[ose] from its contract with [a third party] and the parties' conduct, not a benefit plan." *Id.* at *6.

*Regents* is inapposite for two reasons. First, that case involved the narrower concept of complete preemption under ERISA § 502, rather than the broader conflict preemption under ERISA § 514. *Regents*, 2024 WL 2209595, at *5. This nuance is important because "complete preemption is an exception to the well-pleaded complaint rule that . . . creates federal question jurisdiction whereas conflict preemption under § 514(a) does not." *Livingston v. Lange*, No. 03 C 50120, 2003 WL 21557676, at *1 (N.D. Ill. July 7, 2003). The Ninth Circuit has coined complete preemption as "super preemption" and identified its occurrence as "rare." *Retail Prop. Tr. v. United Bhd. of Carpenters & Joiners of Am.*, 768 F.3d 938, 947 (9th Cir. 2014). "And, because complete preemption is rare, many federal statutes—far more than support complete preemption—will support" a defendant's defensive preemption argument (like conflict preemption) "that because federal law preempts state law, the defendant cannot be held liable under state law." *Id.* at 948.

Here, HealthChoice does not contend that Northwestern's claims implicate complete preemption by disguising federal claims under ERISA § 502 in state-law costumes. And Northwestern itself concedes it is neither a participant nor beneficiary with standing to assert an ERISA claim. (Opp'n at 1208, n. 7). Instead, HealthChoice raises a non-jurisdictional defense that Northwestern has pled legitimate state-law claims which relate too closely to ERISA under § 514. As discussed above, the Court agrees.

Second, the Court found after reviewing the complaint allegations and arguments of the parties in *Regents* that the healthcare provider's claims were independent of any ERISA plan. That was a context-specific analysis focused on assessing if removal was proper because the plaintiff's complaint established that the case arose under federal law. *See e.g., Davila*, 542 U.S. at 211 ("To

14

determine whether . . . causes of actions fall within the scope of ERISA § 502(a)(1)(B), [courts] must examine [the] complaints . . . and the various plan documents."). While the general complaint allegations are similar, the circumstances with respect to those specific patients were not. Simply put, it strains credulity to suggest, as Northwestern does here, that attempting to recoup payments for claims denied as medically unnecessary "in no way relate[] to any plan benefits the Patients may have with [HealthChoice]." (Opp'n, at 1211). Accordingly, the state-law claims here are conflict preempted by ERISA.

## CONCLUSION

For all the foregoing reasons, HealthChoice's motion to dismiss is granted, and the complaint is dismissed without prejudice. Northwestern is granted leave to file an amended complaint consistent with this ruling by 6/11/25.

**DATED**: May 21, 2025               **ENTERED**:

                                      *LaShonda A Hunt*
                                      LASHONDA A. HUNT
                                      United States District Judge